# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CATO CAPITAL LLC, a Connecticut limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> HEMISPHERX BIOPHARMA, INC., a Delaware corporation, <br><br> Defendant. | C.A. No. _____ <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Cato Capital LLC ("CATO"), plaintiff, by its attorneys, files this Complaint against Hemispherx Biopharma, Inc. ("Hemispherx"), defendant, and states as follows:

### THE PARTIES

1. CATO is a limited liability company organized under the laws of the State of Connecticut having its principal place of business at 31 Woodland Street, Hartford, CT. It is in the investment banking business.

2. Hemispherx is a corporation incorporated in the State of Delaware having its principal place of business at 1617 JFK Boulevard, One Penn Center, Philadelphia, PA. It is in the biopharmaceutical industry.

### JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

4. The Court has personal jurisdiction over Hemispherx because Hemispherx is a corporation incorporated in the State of Delaware.

RLF1-3419141-1

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because Hemispherx is subject to personal jurisdiction in this District.

6. CATO filed a Demand for Arbitration against Hemispherx with the American Arbitration Association ("AAA") on June 24, 2009. Hemispherx did not respond to the Demand or to AAA's June 25, 2009 request that Hemispherx provide written consent for AAA's continued administration of the arbitration. By letter dated July 17, 2009, Jeffrey B. Miceli, Esq., counsel for Hemispherx, notified CATO that Hemispherx would not agree to an arbitration forum in Delaware, and stated that if CATO wished to pursue this matter, it should institute litigation in Delaware pursuant to the engagement letter executed by the parties. See Letter July 17, 2009 letter from Jeffrey B. Miceli, Esq., counsel for Hemispherx, attached as Exhibit 1. Accordingly, because of the refusal of Hemispherx to arbitrate and in accordance with the parties' Agreement (Exhibit 2), this lawsuit has been filed with this Court.

## FACTUAL BACKGROUND

7. In October 2008, CATO was introduced to Hemispherx, a publicly traded company on the American Stock Exchange with ticker symbol HEB, through an intermediary, the Sage Group ("Sage"), a privately-held healthcare consulting group. On information and belief, Hemispherx retained Sage as a consultant and strategic partner in connection with its efforts related to Ampligen (an experimental immunotherapeutic agent for chronic fatigue syndrome), and other experimental pharmaceuticals that did not have Food and Drug Administration (FDA) approval. At all times relevant to events at issue in this action, CATO's principal contact at Sage was Wayne Pambianchi ("Pambianchi"), an executive director of Sage, who had both actual and apparent authority to act as an agent of Hemispherx.

8. At the time of CATO's introduction to Hemispherx, Hemispherx had less than one year of cash available. Because Hemispherx needed to focus on several new and experimental drugs that were undergoing FDA review, it recognized that it would have only limited opportunity to bring in significant revenue. Hemispherx therefore sought CATO's services to identify alternative (non-bank) financing sources.

9. By letter dated November 19, 2008 between CATO and Hemispherx (the "Engagement Letter"), and the appended Terms and Conditions for Retention incorporated by express reference in the Engagement Letter ("Terms and Conditions for Retention") (collectively, the "Agreement"), CATO and Hemispherx finalized CATO's engagement for the purpose of facilitating debt and equity financing for Hemispherx on November 24, 2008. The Agreement is attached hereto as Exhibit 2. The signatories to the Agreement were Solomon Lax ("Lax"), CATO's Managing Director, and Dr. William A. Carter ("Carter"), Hemispherx's Chairman and CEO. Pursuant to the Agreement, CATO agreed to familiarize itself with Hemispherx's business operations, properties, financial condition and prospects; screen and contact potential investors; assist in negotiations with prospective investors; and advise and assist Hemispherx in structuring and pricing placements of financing. In essence, Hemispherx hired CATO to locate a source of capital for Hemispherx.

10. Hemispherx agreed to compensate CATO in accordance with the schedule set forth in Section 2 of the Engagement Letter with respect to any transaction completed with any prospect identified by CATO during "(i) the term of this Agreement [defined as the completion of a transaction or four months from the date of execution of the Agreement] or (ii) the eight month period (the 'Tail Period') following the term of this Agreement." Compensation would be due only if "a Transaction in fact closes with a third party introduced to [Hemispherx] by CATO

(a 'CATO Prospect')." CATO Prospects were identified in a list that was appended to the Agreement on November 24, 2008. The list of CATO Prospects is attached hereto as Exhibit 3. In sum, if Hemispherx closed a transaction with a CATO Prospect within a year of execution of the Agreement, Hemispherx would be required to compensate CATO in accordance with the terms of the Agreement. Thus, CATO was entitled to compensation for all CATO Prospects who completed a transaction with Hemispherx on or after November 24, 2008, until November 24, 2009.

11. CATO's identification of CATO Prospects as a condition of the Agreement was important to both CATO and Hemispherx. Hemispherx requested that CATO identify the specific investors that it intended to pursue. The purpose of the disclosure was to permit Hemispherx to provide CATO with notice that it already had identified or had a relationship with any of the entities on the list of CATO Prospects. CATO agreed to disclose this proprietary information so that if a transaction materialized, there would not be any confusion about which entity (CATO or Hemispherx) was responsible for bringing a particular investor to the table. CATO and Hemispherx discussed and negotiated the list of CATO Prospects before it was finalized. CATO and Hemispherx agreed that although CATO would not receive a retainer, CATO would be paid if a transaction resulted with any of the CATO Prospects during the term of the Agreement or the tail period.

12. The initial list of sixteen CATO Prospects was submitted to Hemispherx on November 24, 2008, and incorporated as an appendix to the Agreement. Hemispherx did not object to any of the names on the list, or indicate in any way that it previously had identified or had a relationship with any of the CATO Prospects. The list of CATO Prospects included

"Hudson Bay," a short-hand reference to Hudson Bay Capital Management LP ("Hudson Bay"), a New York-based hedge fund.

13. Upon execution of the Agreement, CATO dove into its assignment. Because Hemispherx had not had success raising capital through its usual routes, CATO recommended that Hemispherx consider structuring a bridge loan collateralized by their laboratory facility to provide capital during the pendency of an anticipated FDA approval. Hemispherx was receptive to this suggestion. Through diligent effort, CATO produced a term sheet for a $2 million to $3 million bridge loan from a single CATO Prospect, Centurion Credit Management, LP, and a verbal offer for $4 million to $5 million from Iroquois Management on December 23, 2008. Hemispherx rejected both offers. At the time, the Hemispherx decision in rejecting the Centurion offer was puzzling because the term sheet presented more than enough capital to cover Hemispherx until the expected FDA results would be announced.

14. CATO also contacted numerous CATO Prospects on behalf of Hemispherx. As a result of these contacts, CATO arranged five meetings with CATO Prospects, all of which were attended by Carter and Pambianchi as agent for Hemispherx, and in some cases other agents and representatives of Hemispherx, as well.

15. By email dated November 30, 2008, Lax, Managing Director of CATO, contacted George Antonopoulos, a fund portfolio manager at Hudson Bay, describing the Hemispherx opportunity and soliciting Hudson Bay's interest. See Exhibit 4. When Lax did not receive a response from Mr. Antonopoulos within a week, Lax telephoned Mr. Antonopoulos and spoke with his assistant, Deborah Wollenberg. Ms. Wollenberg requested that Lax resend his email to her so that she could be sure that Mr. Antonopoulos received it. On December 4, 2008, Lax emailed Ms. Wollenberg again describing the Hemispherx opportunity. On that same date, Ms.

Wollenberg confirmed receipt of the email and stated that she would pass along the information to the principals of Hudson Bay as promised. See Exhibit 5.

16. Also, on November 30, 2008, Lax, on behalf of CATO, emailed Pambianchi, in his capacity as agent for Hemispherx, to request that five additional companies, including Cranshire Capital LP ("Cranshire Capital"), be added to the list of CATO Prospects. On December 1, 2008, Pambianchi responded that one of the companies, Ramius, might present a conflict. Later that day, Pambianchi confirmed that a conflict existed and that Ramius should not be contacted. Lax agreed. See Exhibit 6. Significantly, Pambianchi copied the Board of Hemispherx on his emails. This exchange demonstrated Hemispherx's awareness that the purpose of the list of CATO Prospects was to prevent overlapping effort, and to avoid ambiguity as to CATO's entitlement to compensation in the event that a transaction with any CATO Prospect were finalized.

17. Upon receiving permission from Hemispherx to add Cranshire Capital to the list of CATO Prospects, Lax contacted Keith Goodman, a portfolio manager at Cranshire Capital, and spoke with him about the Hemispherx opportunity. See Exhibit 7. Mr. Goodman said that he had seen the transaction in the past and to his knowledge, it was not going to happen. He added that he had turned it down since he had been solicited for a minimum of a $1 million investment. Lax advised Mr. Goodman that he (Lax) would be structuring the investment differently and in a way that would be more attractive to Cranshire Capital. Mr. Goodman indicated that if that were the case, he had some interest and wished to be kept in the loop as the deal developed.

18. On January 5, 2009, Lax requested permission to add three additional names to the list of CATO Prospects. By email dated January 6, 2009, Pambianchi, in his capacity as

actual and apparent agent for Hemispherx, approved that request. Carter was copied on Pambianchi's response. See Exhibit 8. This exchange further demonstrated Hemispherx's awareness that the purpose of the list of CATO Prospects was to prevent overlapping effort, and to avoid ambiguity as to CATO's entitlement to compensation in the event that a transaction with any CATO Prospect were finalized.

19. On January 12, 2009, Pambianchi emailed Lax to propose modifications to the list of CATO Prospects. See Exhibit 9. Pambianchi stated:

> I think you know there is another group that has been working on the same type of secured, convertible note financing. To avoid conflicts and respect everyone's efforts, I have annotated the list you sent a few days ago. There are very few overlaps and where there are, I suggest a split, the % being what I propose you get of your fees as agreed. I propose eliminating a few, as I have done with the other group, because they seem more engaged.

20. Pambianchi attached a list of the previously agreed upon CATO Prospects to his email. See Exhibit 10. The names of four CATO Prospects (Enable Capital, Roswell Capital, Whalehaven Capital and Cranshire Capital) were stricken through. The names of three other CATO Prospects (Hudson Bay, Iroquois Capital, and LH Financial) were highlighted, and a percentage figure was inserted after each of those entries. The percentage figure inserted after Hudson Bay was 50%. In essence, Hemispherx was proposing modifications to the Agreement as follows: In the event that a transaction occurred with Cranshire Capital, Hemispherx would not be obligated to compensate CATO. In the event that a transaction occurred with Hudson Bay, Hemispherx would only be obligated pay CATO 50% of the agreed upon fees.

21. On January 12, 2009, Lax replied to Pambianchi, rejecting his proposal and offering to discuss the issues raised in Pambianchi's email. Lax also stated that contrary to Pambianchi's assertion, Lax was unaware that another group presently was working on this matter. See Exhibit 11.

22. On January 14, 2009, Lax spoke with Pambianchi by telephone. Pambianchi apologized for his proposal on behalf of Hemispherx. Pambianchi stated that another group was working to secure funds and his email was motivated by a concern that if a transaction took place, Hemispherx would end up paying double fees. Pambianchi declined to identify this entity other than to say that it was a small investment bank in New York. Pambianchi reassured Lax that there was little overlap between the efforts of this other entity and CATO's. Pambianchi reaffirmed that Carter, Chairman and CEO of Hemispherx, was very happy with the dual efforts of CATO and the other organization, and felt that it was the "best of both worlds." Pambianchi also reiterated that Hemispherx and CATO had a valid contract, and that CATO was entitled to be covered for its fees should a transaction occur with a CATO Prospect. Nevertheless, Pambianchi suggested that it would be in CATO's interest to be "reasonable" and negotiate a lower fee. Lax rejected that suggestion.

23. On or about May 15, 2009, CATO learned that Hemispherx closed a $15 million financing transaction with Hudson Bay, one of the CATO Prospects. Thereafter, Lax telephoned Pambianchi and left him a message indicating that CATO was aware of Hemispherx's transaction with a CATO Prospect. Pambianchi responded by SMS message asking for a few days to get back to CATO. Although Lax followed up by phone and SMS, Pambianchi did not respond.

24. By letter to Hemispherx dated May 22, 2009, CATO demanded full payment of its fee under the terms of the Agreement. See Exhibit 12. By letter dated May 29, 2009, Thomas K. Equels, Esq., counsel for Hemispherx and a member of Hemispherx's Board of Directors, rejected CATO's demand. See Exhibit 13.

25. On information and belief, another CATO Prospect, Cranshire Capital, also made a significant investment in Hemispherx. Certain details of the Hemispherx transaction with Cranshire Capital were filed with the SEC on May 28, 2009. See Exhibit 14.

## COUNT I

## BREACH OF CONTRACT

26. CATO incorporates by reference the allegations set forth in paragraphs 1 through 25 of this Complaint as if set forth in full herein.

27. The Agreement constitutes a binding contract between CATO and Hemispherx. Pursuant to the Agreement between CATO and Hemispherx, CATO agreed to familiarize itself with Hemispherx's business operations, properties, financial condition and prospects; screen and contact potential investors; assist in negotiations with prospective investors; and advise and assist Hemispherx in structuring and pricing placements of financing. CATO fulfilled all of its obligations under the Agreement.

28. Pursuant to the Agreement, CATO provided Hemispherx with a proprietary list of CATO Prospects. The parties agreed that if a transaction occurred resulting in financing to Hemispherx with any of the CATO Prospects, CATO would be entitled to fees as described in the Agreement. On information and belief, in May 2009, Hemispherx received $15 million in financing from Hudson Bay, a CATO Prospect. CATO therefore earned a total fee of approximately $1.2 million in cash, plus additional warrants worth approximately $3.8 million if exercised or sold in the secondary market, for an approximate total of $5 million. In addition, if any other CATO prospect invested or financed Hemispherx, CATO would be entitled to additional compensation. At this point, it is unknown if CATO is entitled to further compensation. Accordingly, CATO respectfully reserves the right to amend this Complaint.

29. Hemispherx is in breach of its obligation under the Agreement to pay CATO for the Hudson Bay and Cranshire Capital transactions. On information and belief, CATO conservatively estimates this amount to be at least $5 million. This amount is subject to revision pending discovery regarding the nature and extent of Hemispherx's transactions with CATO Prospects. To date, CATO has not been paid and its claim for the fees to which it is entitled has been rejected. See Exhibits 1 through 14. CATO has abided by all terms of the Agreement.

30. Pursuant to the Agreement, the losing party is required to pay all attorneys fees and costs incurred, by the prevailing party.

WHEREFORE, CATO respectfully requests that the Court:

A. Award CATO at least $5 million, representing compensatory damages, plus pre and post judgment interest, attorneys' fees and costs. The amount of compensatory damages is subject to revision pending discovery regarding the nature and extent of Hemispherx's transactions with CATO Prospects.

B. Grant such other and further relief as the Court deems appropriate.

*OF COUNSEL.*
Neil J. Dilloff
Tracey Gann Turner
DLA PIPER LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

Chad M. Shandler (#3796)
Shandler@rlf.com
Stephen Ferguson (#5167)
ferguson@rlf.com
Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

Dated: July 28, 2009

Attorneys for Plaintiff Cato Capital LLC